UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DIANA JEAN BROUILLETTE,

                Plaintiff,

v.                                                    6:14-CV-1305
                                                     (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

DESANTIS & DESANTIS                   MICHAEL V. DESANTIS, ESQ.
  Counsel for Plaintiff
286 Genesee St.
Utica, NY 13502

U.S. SOCIAL SECURITY ADMIN.        FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 14.) This case has proceeded in accordance with General Order 18.

Currently before the Court, in this Social Security action filed by Diana Jean Brouillette ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 24, 1960. (T. 107.) She completed high school. (T. 121.) Generally, Plaintiff's alleged disability consists of asthma, vocal cord dysfunction, rhinitis, anxiety, and depression. (T. 112.) Her alleged disability onset date is May 2, 2007. (T. 107.) Her date last insured is March 31, 2013. (T. 460.)[1] She previously worked as an office assistant. (T. 113.)

### B. Procedural History

On November 3, 2008, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 52, 93.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 22, 2010, Plaintiff appeared before the ALJ, John P. Ramos. (T. 23-51.) On August 9, 2010, ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-22.) On May 4, 2011, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff commenced an action in this Court. (No. 6:11-CV-0566.) On September 28, 2012 this Court remanded Plaintiff's case to the Commissioner for further administrative proceedings. *See Brouillette v. Astrue*, 901

---

[1] Elsewhere in the record Plaintiff's date last insured is listed as December 31, 2012. (T. 53, 108.)

F.Supp.2d 328 (N.D.N.Y. 2012). On October 31, 2012, the AC issued a Notice of Order of Appeals Council Remanding Case to Administrative Law Judge. (T. 601-603.) On May 22, 2013, Plaintiff again appeared before ALJ Ramos. (T. 491-530.) On June 20, 2013, ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 454-490.) On September 11, 2014, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 443-447.) Thereafter, Plaintiff again timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 460-481.) First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2013 and Plaintiff had not engaged in substantial gainful activity since May 2, 2007. (T. 460.) Second, the ALJ found that Plaintiff had the severe impairments of bronchial asthma, laryngeal tension disorder, and depressive disorder. (T. 461.) The ALJ determined that Plaintiff's diabetes mellitus, mitral valve prolapse, angina, gastroesophageal reflux disease, reflux esophagitis, irritable bowel syndrome, hemorrhoids, hiatal hernia, hypertension, hyperthyroidism, thyroid nodules, fatty liver, fibrocystic breast disease, fibromyalgia, history of herniated disc, right arm lymphedema, and arthritis of the knees were non-severe impairments. (T. 462-465.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 465-467.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the exertional demands of work at all levels. (T. 467.) The ALJ found that Plaintiff:

> [had] no exertional, postural, manipulative, visual, or communicative, limitations or restrictions. She should avoid all exposure to respiratory irritants, such as fumes, odors, dust, gases, poor ventilation, extreme temperatures, and humidity. [Plaintiff] also retain[ed] the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain concentration for simple tasks; regularly attend to a routine and maintain a schedule; require[ed] occasional, brief interaction with the general public; [could] otherwise relate to and interact appropriately with others to the extent necessary to carry our simple tasks; and [could] handle reasonable levels of simple, repetitive work-related stress in that she [could] make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work.

(T. 467-468.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 478-481.) Based on vocational expert ("VE") testimony, the ALJ determined Plaintiff could perform work as an office helper (DOT 239.567-010). (T. 479.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to comply with the AC remand order. (Dkt. No. 11 at 6-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ "made factual findings which required a conclusion of inability to engage in any substantial, gainful activity." (*Id.* at 12-13.) Third, Plaintiff argues the ALJ "improperly restricted the cross examination of the [VE] to prevent the eliciting of testimony that the jobs submitted by him, as they were normally performed, would involve disabling exposure to [Plaintiff]." (*Id.* at 13-22.) Fourth, Plaintiff argues the ALJ erred in the amount of weight

4

he afforded to consultative examiner, Kalyani Ganesh, M.D. (*Id.* at 22-23.) Fifth, and lastly, Plaintiff argues the ALJ failed to follow the treating physician rule. (*Id.* at 23-25.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly evaluated the medical opinion evidence. (Dkt. No. 12 at 7-11 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly relied on VE testimony. (*Id.* at 11-13.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

For ease of analysis Plaintiff's arguments will be addressed in a consolidated manner.

### A. Treating Physician, Michael Lax, M.D.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also*

7

SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Here, Plaintiff essentially argues the ALJ erred in his assessment of the medical opinion of Plaintiff's treating provider, Dr. Lax. Specifically, Plaintiff argues: 1) the ALJ failed to comply with the AC remand order directing the ALJ to provide a more complete analysis of Dr. Lax's medical opinion, 2) the ALJ erred in relying on Plaintiff's "limited course of treatment" in his evaluation of Dr. Lax's medical opinion, 3) Dr. Lax's opinion was supported by substantial objective medical evidence and therefore should have been afforded more weight, and 4) the ALJ erred in affording "great weight" to the consultative examiner, Dr. Ganesh. (Dkt. No. 11 at 6-12, 22-25 [Pl.'s Mem. of Law].)

Dr. Lax treated Plaintiff in the context of her Worker's Compensation claim. As noted by the ALJ, decisions rendered by the New York State Worker's Compensation Board are not binding on the Commissioner. (T. 473.) Further, the ALJ stated that although not binding, he considered Dr. Lax's findings and opinions in making his RFC determination. (*Id.*)

Overall, Dr. Lax's medical opinions did not provide specific functional limitations outside his conclusion that Plaintiff was "disabled" within the context of her Worker's Compensation claim. (T. 241, 258, 260, 262, 264, 266, 268, 270, 395, 397, 398.) However, Dr. Lax did provide specific work limitations in the context of a form for VESID. (T. 236-239.)[2] Therein, Dr. Lax specifically opined Plaintiff was "moderately limited" to "severely limited" in her ability to tolerate dust, fumes, temperature extremes, and humidity. (*Id.*)

---

[2] "Vocational and Educational Services for Individuals with Disabilities"

1)     Remand Order

Under the Regulations, "[t]he [ALJ] shall take any action that is ordered by the [AC] and may take any additional action that is not inconsistent with the [AC] remand order." 20 C.F.R. § 404.977(b). If an ALJ fails to comply with an AC remand order, his decision is subject to judicial review and can form the basis for a remand to the Commissioner. 42 U.S.C.A. § 405(g).

Here, the AC Order dated October 31, 2012, directed remand for further proceeding in accordance with the findings outlined this Court's decision. (T. 603.) Therein, Judge Kahn held that the ALJ "failed to provide any explanation for his lack of consideration of [Dr. Lax's] opinion" and remanded so that the ALJ could provide an assessment and reasoning for the weight provided to the doctor's opinion. *Brouillette*, 901 F.Supp.2d at 339.

Plaintiff argues the ALJ failed to comply with the remand order which directed him to "take into account [Dr. Lax's] opinion." (Dkt. No. 11 at 6 [Pl.'s Mem. of Law].)[3] However, on remand, the ALJ remedied any error he made in his previous decision. In his June 2013 decision, the ALJ adequately summarized Dr. Lax's medical opinion, and provided a complete and thorough analysis of Dr. Lax's opinion in accordance with the Regulations. For example, in his RFC analysis, the ALJ discussed Dr. Lax's objective clinical findings, including Dr. Lax's progress notes and specific work related limitations. (T. 473-474.) The ALJ also discussed Dr. Lax's opinion in the context of his step two

---

[3]     Plaintiff provides a citation of the Court's decision in *Brouillette* in which the Court concluded the ALJ failed to properly assess Dr. Lax's opinion. (Dkt. No. 11 at 6 [Pl.'s Mem. of Law].) The Plaintiff also provides a citation from the ALJ decision in which the ALJ concluded that Dr. Lax's opinion was not entitled to controlling weight. (*Id.* at 7.) However, besides these two citations and her conclusory statement that the ALJ failed to comply with the directions on remand, Plaintiff fails to provide any support for her argument.

9

analysis and credibility analysis. (T. 461, 470.) The ALJ also provided his reasoning for not affording controlling weight to Dr. Lax's opinion, namely it was not well supported and was inconsistent with other evidence in the record. (T. 474.) The ALJ afforded Dr. Lax's opinion that Plaintiff had moderate to severe functional limitations to dust, fumes, temperature extremes, and humidity, "little weight." (*Id.*) The ALJ did not merely make a conclusory determination regarding Dr. Lax's opinion, the ALJ's decision thoroughly discussed all the objective and opinion evidence in the record and provided a clear analysis of the weight provided to the medical opinions. Therefore, the ALJ complied with the remand order directing him to provide an explanation of the weight afforded to Dr. Lax's opinion.

   2)   Plaintiff's "Limited Course of Treatment"

Plaintiff argues the ALJ erred in relying on Plaintiff's "limited course of treatment" in his analysis of Dr. Lax's opinion because it was not a "valid inconsistency." (Dkt. No. 11 at 7 [Pl.'s Mem. of Law].)[4] The Regulations state that in evaluating medical opinion evidence, an ALJ must take an "opinion's consistency with the record as a whole" into consideration. 20 C.F.R. §§ 404.1527(c)(2)(iii), 416.927(c)(2)(iii).

Here, the ALJ did not err in his evaluation of Plaintiff's medical treatment. Throughout his decision the ALJ discussed Plaintiff's medical treatment, including the use of prescription medication. The ALJ summarized Plaintiff's testimony regarding her use of medication for her allergies and asthma, including side effects. (T. 468.) In the context of his credibility analysis, the ALJ thoroughly discussed Plaintiff's asthma

---

[4] In her argument, Plaintiff cites to the ALJ's credibility assessment in which he discussed Plaintiff's treatment. (Dkt. No. 11 at 7 [Pl.'s Mem. of Law].) However, Plaintiff does not argue the ALJ erred in his credibility analysis. In his determination to afford Dr. Lax's opinion little weight, the ALJ does refer to Plaintiff's "limited course of medical treatment." (T. 474.)

treatment and medication, and Plaintiff's monetary concerns surrounding her treatment. (T. 470.) The ALJ concluded that Plaintiff's early concerns regarding the cost of treatment would be "reduced by her ongoing part-time work activity." (*Id.*) The ALJ took into consideration Plaintiff's use of oral and inhaled medication and noted that Plaintiff never required supplemental oxygen or more aggressive treatment. (T. 470.) Further, Plaintiff's treatment was but one of the many factors used in evaluating Dr. Lax's opinion. (T. 470, 474.) Therefore, the ALJ did not err in considering Plaintiff's medical treatment in his overall evaluation of Dr. Lax's medical opinion.

      3)       Substantial Evidence

Plaintiff argues the ALJ erred in referencing only "isolated exhibits" in his analysis of Dr. Lax's opinion and further argues that substantial evidence in the record supports Dr. Lax's opinion. (Dkt. No. 11 at 7-12 [Pl.'s Mem. of Law].) Defendant argues the ALJ properly afforded weight to Dr. Lax's opinion and to the opinions of other treating sources in the record. (Dkt. No. 12 at 7-11 [Def.'s Mem. of Law].)

Here, the ALJ's twenty-two page decision thoroughly discussed the opinion evidence in the record and the ALJ's determination to afford Dr. Lax's opinion "little weight" was supported by substantial evidence. To be sure, while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony, he cannot simply selectively choose evidence in the record that supports his conclusions." *Gecevic v. Secretary of Health and Human Servs.,* 882 F.Supp. 278, 286 (E.D.N.Y.1995) (quoting *Fiorella v. Heckler,* 725 F.2d 174, 176 (2d Cir.1983)). Here, there was no indication that the ALJ impermissibly "cherry picked" the record. The ALJ's decision

11

was thorough, and the ALJ provided an in-depth discussion and analysis of the lengthy record.

In support of her argument, Plaintiff provides evidence from the record which she states reinforced Dr. Lax's opinion. (Dkt. No. 11 at 8-12 [Pl.'s Mem. of Law].) However, as Defendant aptly states, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position; what Plaintiff must show is that no reasonable factfinder could have reached the ALJ's conclusion on this record. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Bonet ex. rel. T.B. v. Colvin*, 523 F.App'x 58, 59 (2d Cir. 2013). Here, despite the evidence cited to by Plaintiff, the record contained substantial evidence to support the ALJ's determination.

The ALJ afforded Dr. Lax's conclusion that Plaintiff was "totally disabled" no weight. (T. 475.) The ALJ's conclusion was proper, because the determination of disability is one for the ALJ. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The ALJ afforded the remainder of Dr. Lax's medical opinions "little weight," reasoning the limitations Dr. Lax imposed were not supported by the record. (T. 474.) Of note, Dr. Lax's functional limitations on the VESID form were consistent with the ALJ's RFC determination that Plaintiff "avoid all exposure to respiratory irritants, such as fumes, odors, dust, gases, poor ventilation, extreme temperatures, and humidity." (T. 467.)

The ALJ further determined Dr. Lax's opinion was not entitled to controlling weight because it was not well-supported by the objective medical evidence and was inconsistent with other substantial evidence, such as Plaintiff's medical treatment and

12

her activities of daily living. (*Id.*) For example, the ALJ relied on objective medical tests, such as CT scans and stroboscopic exams, which indicated normal or nominal results. (T. 472.)

Plaintiff alleges the ALJ failed to specify what activities he was referring to in his statement that Plaintiff's "continuing engagement in a wide range of activities requiring some exposure to known irritants without significant decompensation in her medical condition" was inconsistent with Dr. Lax's opinion. (Dkt. No. 11 at 10 [Pl.'s Mem. of Law].) However, the ALJ's decision specifically referenced activities of daily living that required some exposure to known irritants. For example, the ALJ discussed Plaintiff's ability to do some household chores and to grocery shop. (T. 469.) The ALJ also discussed Plaintiff's ability to travel to and from work, and to work on a part time basis, which required expose to outdoor and indoor allergens. (T. 470.) Further, the ALJ concluded that although Plaintiff limited her exposure to certain allergens in the household, she could tolerate "heat and cooking smells, pet dander, household cleaning supplies and dust." (T. 471.) The ALJ noted that Plaintiff returned to work on a part-time basis and concurrent medical notations did not indicate her return to work exacerbated her symptoms. (T. 472.) The ALJ provided a thorough and complete discussion and analysis of Dr. Lax's opinion. For the reasons stated herein, and in Defendant's brief, substantial evidence supported the ALJ's determination to afford Dr. Lax's opinion "little weight."

Plaintiff argues the ALJ erred in affording consultative examiner, Dr. Ganesh, "great weight." (Dkt. No. 11 at 22-23 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the weight afforded to Dr. Ganesh's opinion was in error, because the ALJ afforded the

13

same opinion lesser weight in his 2010 decision and the ALJ provided no explanation for his 2013 weight determination. (*Id.* at 22.)

Dr. Ganesh opined in a medical source statement, that Plaintiff had no gross limitations to sitting, standing, walking, or the use of her upper extremities. (T. 349.) Dr. Ganesh further opined Plaintiff should avoid known respiratory irritants. (*Id.*)

As Defendant properly asserts, the AC vacated the 2010 decision, therefore, the ALJ was not required to adhere to his previous decision. (Dkt. No. 12 at 10 [Def.'s Mem. of Law]), *see Gittens v. Astrue*, No. 12-CV-3224, 2013 WL 4535213, at *8 (S.D.N.Y. Aug. 26, 2013) (citing *Uffre v. Astrue*, No. 6-CV-7755, 2008 WL 1792436, at *7 (S.D.N.Y. Apr. 18, 2008) ("An ALJ making a decision in a case on remand from the Appeals Council, however, is to consider the case *de novo* when the Appeals Council has vacated the ALJ's previous decision.").

Plaintiff then appears to argue the ALJ failed to provide for Dr. Ganesh's limitation to "avoid known respiratory irritants" in his RFC determination, which Plaintiff contends would render her disabled because an "environment completely free of dust, gas, cleaning products does not exist in the real world." (Dkt. No. 11 at 22 [Pl.'s Mem. of Law].) However, the ALJ did provide for this express limitation in his RFC determination and as discussed infra, the VE testified that there were jobs that existed in the national economy which Plaintiff could perform given an RFC which required her to avoid all exposure to respiratory irritants. Therefore, the ALJ did not err in his evaluation of Dr. Ganesh's medical opinion.

### B. The ALJ's Step Five Determination

Plaintiff argues the ALJ's factual findings require a conclusion of disability and the ALJ restricted cross examination of the VE to "prevent the eliciting of testimony." (Dkt. No. 11 at 12-13, 13-21 [Pl.'s Mem. of Law].) Defendant counters that the ALJ properly relied on Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupations ("SCO") in making his step five determination. (Dkt. No. 12 at 11-13 [Def.'s Mem. of Law].)

At step five, the ALJ must determine if a significant number of jobs exist in the national economy that Plaintiff could perform given Plaintiff's RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ can rely on the DOT, and its companion publication, the SCO, for information about the requirements of work in the national economy. *See* SSR 00-4p, (S.S.A. Dec. 4, 2000). An ALJ may call on the testimony of a VE to aid in his determination. *Id.* An ALJ may rely on a VE's testimony regarding a hypothetical as long as "there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion," *see Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983), and accurately reflect the limitations and capabilities of the claimant involved, *see Aubeuf v. Schweiker,* 649 F.2d 107, 114 (2d Cir.1981).

As an initial matter, we find no error in the ALJ's RFC assessment; therefore, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas,* 712 F.2d at 1553-54. At the hearing the ALJ posed a hypothetical to the VE which included the limitation that Plaintiff "should avoid all exposure to respiratory irritants, such as fumes, odors,

15

dust, gas, and poor ventilation, extreme temperatures, such as humidity." (T. 520.) The VE responded that he was "not sure how someone [could] avoid all exposure [to respiratory irritants];" however, the ALJ proceeded to question the VE for clarification. (T. 522.)

The ALJ questioned the VE regarding how the SCO's categorized the levels of exposure to environmental irritants in certain occupations. (T. 523.) The VE explained that the SCO defined levels of exposure as "occasionally, frequently, [and] never." (*Id.*) After some additional questions regarding Plaintiff's mental limitations, the ALJ returned to Plaintiff's respiratory restrictions. According to the VE, the occupation of non-emergency dispatch (DOT 239.367-014) required "no" exposure to respiratory irritants under the SCO, the occupation of mailroom helper (DOT 209.687-026) required "occasional" exposure to respiratory irritants, and the occupation of office helper (DOT 239.567-010) required "no" exposure to respiratory irritants under the SCO. (T. 524-525.) The VE stated his testimony was consistent with the DOT and SCO. (T. 526.)

In his decision, the ALJ stated that based on the VE's testimony, Plaintiff could perform the occupation of office helper. (T. 479.) The ALJ's decision specifically addressed the VE's testimony regarding the SCO. (*Id.*) The ALJ's decision also addressed Plaintiff's argument that she would be unable to perform work as an office helper because that occupation was not free of exposure to respiratory irritants in the "real world." (T. 480.) The ALJ stated in making his determination he relied on VE testimony, which complied with the DOT and SCO; and further, he concluded there was no objective medical evidence to support additional limitations, "particularly in light of [Plaintiff's] continued exposure to some respiratory irritants at work, at home, and in

16

other settings without significant or long-term effects or deterioration in her condition."
(*Id.*)

Plaintiff appears to argue that the ALJ prevented her from cross examining the VE, which would have elicited testimony indicating that no jobs existed in the "real world" which a plaintiff could perform with a restriction to no exposure to respiratory irritants. To be sure, Plaintiff has the due process right to cross-examine a vocational expert and present rebuttal evidence. *See Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984). Here, Plaintiff's due process was not restricted because she was given the opportunity to cross-examine the VE. The ALJ did stop Plaintiff from posing a specific question to the VE. However, the VE provided testimony elsewhere which answered Plaintiff's question and further, substantial evidence supported the ALJ's step five determination that there was work Plaintiff could perform.

On cross-examination Plaintiff posed to the VE the contention that there "wouldn't be a job that had no exposure to irritants." (T. 527.) Before the VE could answer, the ALJ interrupted. (T. 527.) The ALJ informed Plaintiff's counsel that the VE could testify regarding information contained in the DOT, SCO, and regarding the availability of jobs; however, the VE could not provide an opinion outside his professional realm. (T. 527.) Further, the ALJ stated he was aware of Plaintiff's argument and was not "forestall[ing]" it, the ALJ indicated cross-examination of the VE was not the proper place to raise the argument. (T. 528.) Although the ALJ did not allow Plaintiff's counsel to proceed with his question, the VE did state earlier in the hearing that he was "not sure how someone [could] avoid all exposure [to respiratory irritants]." (T. 522.) However, as previously discussed, the VE testified there were

17

occupations which allowed for no exposure to respiratory irritants according to the SCO. Further, a VE may provide evidence not listed in the DOT; however, ALJs "may not rely on evidence provided by a VE . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with [Social Security Administration's] regulatory policies or definitions."  SSR 00-4p.

The VE provided examples of occupations which existed in significant numbers in the national economy which Plaintiff could perform given her RFC, including a limitation to avoid all respiratory irritants.  Substantial evidence supported the ALJ's RFC determination; therefore, the ALJ did not err in relying on VE testimony based on the RFC.  Although the VE voiced a concern regarding the need to avoid all respiratory irritants, the ALJ properly relied on the VE's testimony that according to the definitions provided by the DOT and SCO, the occupations of non-emergency dispatcher and office worker required "no" exposure to respiratory irritants and his testimony was consistent with the DOT.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:	January 5, 2016	/s/ Bill Carter
	William B. Mitchell Carter
	U.S. Magistrate Judge